Robert Brown, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 5, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Michael J. Campbell*, with him *Dana M. Breslin*, for petitioner.

*Betty F. Perry*, Assistant Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., May 23, 1979:

Robert Brown appeals a Department of Public Welfare (DPW) decision which reduced his level of care under the State Medical Assistance Program from "skilled" to "intermediate" care. We affirm.

Does Mr. Brown qualify under the definition and intent of federal and state law for skilled care in a State Medical Assistance Program; must non-medical needs be considered in determining a level of care; did the fair hearing violate due process?

This 76-year old male patient received skilled care benefits at the Mercy Convalescent Home for ten years. He is epileptic (for which he takes Dilantin), has lost the toes on his right foot, has occasional recurring ulcers on his right foot, is occasionally confused and occasionally incontinent. He is without family or outside friends who are able to care for him and is said to be an alcoholic. At the same time he walks without aid, is free to come and go as he pleases, needs no assistance with meals, dressing, shaving, etc., desires to leave the home, is quite sociable and makes friends easily. His attending physician described his general state of health as fairly good.

The Office of Medical Programs consisting of doctors and nurses made on-site visits and redetermined

that Mr. Brown required intermediate care. A staff doctor, nurse and administrator disagreed, and so testified at a fair hearing. The hearing examiner concluded that daily skilled care was not required and DPW affirmed the adjudication.

State benefits for skilled and intermediate medical assistance are authorized by Section 443.1 of the Public Welfare Code.[1] The level of care required is to be based on an individualized determination which takes into account both health and social problems of the patient.[2]

Skilled care benefits are skilled nursing and rehabilitative services needed by the patient on a daily basis, which are practical to provide only in a skilled nursing facility.[3] Skilled care patients generally fall into two categories: the short term convalescent recovering from serious accident, operation or illness, or the long term chronically ill.[4] Examples of skilled care services include administration of medication with known dangerous side effects; restrictive procedures such as bowel training and physical therapy; "tube" maintenance; tracheostomy maintenance; and the administration of oxygen.[5]

Intermediate care[6] is reserved for patients whose physical or mental condition is such that they require living accommodations and care which are available at an intermediate care facility. Examples of this type of care are those who need assistance with medication, those who are not roombound, those with mild symptoms of forgetfulness, confusion and inability to lead an independent life.

---

[1] Act of June 13, 1967, P.L. 31, *as amended*, added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. §443.1.

[2] DPW-OMP-MA Manual 9424.3.

[3] DPW-OMP-MA Manual 9424.31.

[4] DPW-OMP-MA Manual 9424.3.

[5] DPW-OMP-MA Manual 9424.32.

[6] DPW-OMP-MA Manual 9424.11(b).

We hold that the administrative action reducing claimant's level of care was proper after considering the complete record. We are mindful that stubborn, unreasonable adherence to bureaucratic regulations can be inimical to the patient's best interests. *Levy v. Department of Education*, 41 Pa. Commonwealth Ct. 356, 399 A.2d 159 (1979). Here, medical forms submitted by skilled nursing personnel and medical doctors and supportive medical testimony tell us that intermediate care will adequately support Mr. Brown.[7] The record clearly supports the determination in favor of intermediate care because Mr. Brown's state of mental and physical health requires nothing more.

The record was replete with testimony regarding the trauma associated with uprooting elderly patients, of the need to take into account non-medical factors such as friendships, psychological dependence and social behavior. Rather than ignoring this information, the findings indicate that they were considered in arriving at a determination of the proper level of care.

That a fair hearing was not conducted in a manner comporting with due process has no basis. The presence of counsel is not mandated and the record indicates that Mr. Brown testified, as did a number of professionals including his physician, a staff nurse, a social worker, and the Home's administrator. The hearing examiner elicited, heard and considered all relevant testimony in an indisputably complete hearing.

Accordingly, we

ORDER

AND Now, this 23rd day of May, 1979, the order of the Commonwealth of Pennsylvania, Department of Public Welfare, dated September 15, 1977, reducing Robert Brown's level of care is affirmed.

---

[7] It is axiomatic that intermediate care facilities be available and in fact are a condition of DPW's order.